ADAMS et al. vs. JACOWAY.

1. ATTACHMENT: *Forthcoming bond, when broken. Pleading on.*

The obligors in a delivery bond, executed under sec. 406, Gantt's Digest, have a right to retain the property attached until the court orders a sale of it to satisfy the judgment against the defendant; and when such order is made, they may pay off the judgment, or *must*, by the terms of the bond, deliver the property or its value to the sheriff. Until such failure, there is no breach. And a complaint against the obligors on such bond, which fails to allege any order of court concerning the attached property, shows no cause of action.

2. MISTAKE: *Suit and bond in wrong name.*

Where a suit is brought against one in a wrong name, and a bond is given to secure some action on his part, describing him by the same name, and there is no doubt of identity, the bond is for the action of *the person.* The insertion of the true name by the court in the subsequent proceedings, and the judgment against *the same individual* for whom the obligors became bound, although by a different name, is sufficient; and the change made, with or without notice to the obligors, can not affect their liability. But when the persons are *actually* distinct, a bond given for the conduct of one can not, by change of names in the proceedings, be made to stand good for the action of the other. The test is, *the person* had in view by the obligors in executing the bond. If judgment is rendered against the same person by a different name, the bond holds good. If it be a different person not contemplated in the bond, the obligation can not be transferred.

APPEAL from *Yell* Circuit Court.

Hon. THOS. W. POUND, Special Circuit Judge.

*Ratcliffe*, for appellant.

*Clark & Williams*, contra.

EAKIN, J. Mrs. Jacoway sued the appellants, as obligors in a forthcoming attachment bond, which is set forth at length in the complaint. It appears to have been executed

before a justice of the peace, on the fifteenth of December, 1874, in a suit entitled "M. Jacoway v. G. A. Parsons." It is in the penal sum of $200, conditioned that the defendant, *G. A. Parsons*, should perform the judgment of the court in said action; or that the obligors would have forthcoming 100 bushels of corn, attached in the action, or its value ($100), subject to the order of the court. The complaint then proceeds to state:

That, on appeal to the Yell county circuit court, at the June term, 1876, it appearing that by mistake, in all the pleadings and proceedings in said cause, the defendant had been *G. A. Parsons*, when his proper name was James H. Parsons; and the constable who served the process having appeared in court and identified James H. Parsons as the person actually served, he, was allowed to amend the return on the order of attachment in accordance with the facts; and, on motion of the plaintiff in said cause, due notice of which was given to said James H. Parsons and these defendants, all the pleadings and proceedings in the cause were amended by striking out the said initials, " G. A.," and inserting " James H.," after which the suit proceeded in the new style. The plaintiff obtained judgment at said last named term against James H. Parsons, for $200 debt and interest, and $14.05 costs, upon which an execution was afterwards issued, and was returned *nulla bona*, of which defendants had notice. Breach alleged, that neither James H. Parsons nor defendants, nor any one for them, had complied with the conditions of the bond, but had refused to pay the judgment or render· the corn or its value.

Defendants answer that they executed the bond for, and on behalf of, *G. A. Parsons*, and· no one else, and to release *his* property. They deny that there was any mis-

take on their part as to the person for whom they executed the bond. They say they were well acquainted with "G. A." as well as with "James H." Parsons, who were distinct persons, reported to be brothers, residing near each other and not far from defendants. They had both cultivated land on the Jacoway farm. That on the trial before the justice, of the suit in which the bond was made, judgment was rendered against *G. A. Parsons*, who appealed to the Yell county circuit court, and there filed his written answer to the complaint, praying that the cause might be dismissed and the attachment discharged; and they say that cause has not yet been tried. That at the May term, 1876, on the petition of plaintiff, and by consent of *G. A. Parsons*, the cause was transferred to the Dardanelle district. That it is still there pending, and no judgment has been rendered against said G. A. Parsons. They deny liability upon any pretended judgment against *James H. Parsons*, or that they had any notice of the motion set out in the complaint for the substitution of the name of *James H.* for *G. A.* Parsons, or that they authorized or consented to the change. They say further that *G. A.* Parsons is solvent, and James H. insolvent. They close with a demurrer to the complaint, which demurrer was overruled.

The court sustained a demurrer to this answer. Defendants rested upon it, suffered judgment and appealed.

The bond was executed under *section 406 of Gantt's Digest*, and conditioned that the defendant "shall perform the judgment of the court in this action," *or* that the obligors "will have the one hundred bushels of corn attached in this action, or the value—one hundred dollars —forthcoming, *subject to the order of the court*, for the satisfaction of such judgment." The defendants had the option

on the failure of defendant to pay the judgment, to pay in the value of the corn, or deliver the corn itself, subject to the order of the court.

It was the duty of the court, on rendering judgment for the plaintiff against the defendant, first to apply to its payment any moneys which may have arisen from sales of perishable property, or from proceedings against garnishees. In case there should be none, or they should be exhausted, then, and not before, the court should order a sale by the sheriff of any other attached property which may be under its control. Property bonded under section 406 is presumed to be left in possession of the obligors instead of the officer, but remaining virtually subject to the control of the court, for the purpose of ordering a sale at the proper time, if necessary to satisfy any judgment against defendant. Perchance it may not be necessary, even in case of such judgment. The judgment may be personal, without sustaining the attachment. It may be satisfied by proceeds of sales of perishable property, or by funds recovered from garnishees. Until the contingency occurs, of an order of sale of the property attached in the action, the obligors may keep it. They hold it subject to such order, and when such order is made, may pay off the judgment for defendant, or *must*, by the terms of their bond, deliver the property bonded or its value, to the sheriff. Until such failure, there is no breach. The obligors must have the right to exercise their option when the contingency arises, and if they fail to do either, the court may force them by attachment at once to bring up the property, or order the sheriff to retake and sell it. *Ib., sec. 425 to 431.*

It is not alleged in this case that any judgment was rendered in the attachment suit against the obligors, under

the act of November 10, 1875, and it is not necessary to determine how far that act applied to bonds already executed.

The demurrer to the answer reaches back to the complaint, which fails to allege any order of the court concerning the attached property, and therefore shows no cause of action. The complaint should have been held insufficient.

It is good enough so far as it regards the change of the name of defendant during the suit, from " G. A." to " James H. Parsons." Where a suit is brought against one by a wrong name, and a bond is given to secure some action on his part, describing him by the same name, and where there is no doubt of identity, the bond is for the action of *the person*. The insertion of the true name by the court in the subsequent proceedings, and the judgment against *the same individual* for whom the obligors became bound, although by a different name, is sufficient. The name is merely a means of identification. The change, made with or without notice to the obligors, can not affect their liability. It only imposes on the obligee the burden of alleging and proving the identity of the person intended.

But when the persons are *actually* distinct, a bond given for the conduct of one can not, by substitution of names in the proceedings, be made to stand good for the action of the other. The test is, *the person* had in view by the obligors in executing the bond. If judgment is rendered against the same person by a different name, the bond holds good. If it be a different person not contemplated in the bond, the obligation can not be transferred. The true state of the case depends on proof, to be taken on issues duly made by pleading.

The answer states that there were two distinct persons—brothers—both cultivating portions of the Jacoway farm; "G. A." being solvent, "James H." insolvent. That they gave the bond for "G. A.," to release his property, having him in view—meaning to be responsible for him, and no other. The mere statement of the case is sufficient to show that on no just principle can they be held answerable for the default of "James H.," although his name may have been afterwards substituted in the action for that of "G. A." They say they had no notice of this. But if they had even had notice, they were not bound to interfere. They were not parties to the suit, and might well have rested under the belief, that if the plaintiff desired to change the party defendant, and obtain a judgment against a different person, he was content to waive his advantage under the bond, or, in other words, accept the legitimate legal consequences of his election. If the complaint had not been defective, the demurrer to the answer should have been overruled. It set up a valid defense.

For the errors indicated, let the judgment be reversed and the cause be remanded for further proceedings consistent with this opinion, and with leave to all parties to amend their pleadings.